186 N.J. Super. 119 (1982)
451 A.2d 971
DOROTHY JEAN RILEY HACHE, PLAINTIFF,
v.
WILLIAM DENNIS RILEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial), Passaic County.
Decided August 16, 1982.
*121 Matthew J. Trella for plaintiff.
Victor B. Palmer, Jr. for defendant.
NITTO, J.S.C.
Plaintiff and defendant were divorced in Florida in 1979. The judgment of dissolution of marriage incorporated a written property settlement agreement which provided that plaintiff was to have custody of the two children born of the marriage, subject to specific visitation privileges for defendant. After the parties were divorced defendant moved to California while plaintiff and children moved to New Jersey. The parties and children have continued their residences in these respective states to date.
Defendant's most recent visitation with the children commenced on July 11, 1982, when the children arrived in California to spend approximately one month with their father. On July 28, 1982, while the children were still visiting with him, defendant filed an application for a change of custody in the California courts. Plaintiff was notified but did not appear at the California proceeding. As a result of defendant's uncontested application, the California court entered an order on August 4, 1982 which changed custody of the children from plaintiff to defendant pending a final hearing to be held on August 24, 1982. On the same day that this order was entered in California plaintiff instituted legal proceedings in New Jersey, seeking to enforce her right to custody of the children pursuant to the provisions of the parties' Florida divorce decree.
The interstate ramifications of this matter mandate that its factual circumstances be considered within the framework of the Uniform Child Custody Jurisdiction Act (UCCJA). Both California (West's Ann.Civ.Code §§ 5150 to 5174) and New Jersey (N.J.S.A. 2A:34-28 to 2A:34-52) have adopted the UCCJA. It is therefore this court's purpose to determine which state can properly assume jurisdiction under the UCCJA to *122 decide whether retention of the present custodial arrangement or a modification of that arrangement should be entered on a permanent basis.
To assist the court in reaching this resolution, a court appearance was conducted on August 13, 1982, at which time counsel for both plaintiff and defendant were present to answer several specific questions prepared by the court. Through the efforts of defendant's counsel the court also had the benefit of reviewing copies of all documents filed with the California court in relation to this custody matter.
Upon consideration of the statements made by both counsel at the court appearance and review of both the California and New Jersey pleadings, the court finds that certain factors relevant to the jurisdictional issue are not contested by the parties and should be noted before proceeding into unresolved areas. Initially, mention should be made of the fact that although the original custody decree was entered in Florida, it is clear that plaintiff, defendant and, most importantly, the children presently do not have any significant connections with Florida for purposes of a jurisdictional determination. Neither the parties nor the children have lived in Florida for some time now and neither of the parties has expressed the desire to litigate this case in Florida. It is the finding of this court that Florida no longer satisfies any of the jurisdictional prerequisites contained in the UCCJA and, as a result, cannot assume jurisdiction over this proceeding. The issue of jurisdiction is therefore limited to consideration of two alternatives, California and New Jersey.
Secondly, counsel for the plaintiff and counsel for the defendant both confirmed that plaintiff and children have resided continuously in New Jersey since August 1981. The children are currently not in New Jersey as a result of the California court order transferring their custody to defendant. Based on these facts, this court finds that New Jersey, not California, satisfies the first two provisions of the jurisdictional section of the UCCJA. New Jersey was both the home state of the children *123 and plaintiff at the time of the commencement of the California proceeding and had been the children's and plaintiff's home state six months before the commencement of the proceeding; the children are presently absent from New Jersey because of their retention by defendant, who is claiming their custody, while plaintiff continues to live in this State. N.J.S.A. 2A:34-31(a)(1)(i), 2A:34-31(a)(1)(ii), 2A:34-30(e).
Furthermore, this court finds that New Jersey, not California, satisfies two other provisions of the jurisdictional section of the UCCJA in that the children and plaintiff have a significant connection with this State and there is available in this State substantial evidence concerning the children's present and future care, protection, training and personal relationships. N.J.S.A. 2A:34-31(a)(2)(i), 2A:34-31(a)(2)(ii). Although there are some allegations in the California pleadings that substantial evidence and connections exist in California, the UCCJA itself specifically rejects the reasons set forth by defendant to support these claims. For example, defendant's focus on the children's actual presence in California is of little value in light of the UCCJA provision that physical presence of the children and one of the parties is alone insufficient to confer jurisdiction pursuant to the "significant connection" alternative. N.J.S.A. 2A:34-31(b). Similarly, defendant's mention of the expense of transporting the children back to New Jersey is completely undercut by the following excerpt from the official commentary to the UCCJA:
... jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. ["Child Custody Jurisdiction," U.L.A. at 124 (1979); (emphasis supplied).]
On the other hand, at the August 13, 1982 court appearance it was admitted by counsel for both parties that the children have lived in New Jersey from August 1981 to date; that they have been going to school in this State since they moved here; that the children's maternal grandparents, who allegedly have played a role in the children's upbringing for the past year, live in New Jersey and that the children have both school companions and neighborhood friends in New Jersey.
*124 Under these circumstances, while defendant himself may have a significant connection with California by virtue of his extended residence there, it is abundantly clear that the children do not occupy a similar position. "The interest of the child[ren] is served when the forum has optimum access to relevant evidence about the child[ren] and family. There must be maximum rather than minimum contact with the state." 9 U.L.A., supra.
Defendant's final claim in support of his assertion that substantial evidence concerning the children exists in California, i.e., a California child psychologist's evaluation of the children, is not persuasive. Such an evaluation alone, based upon a single meeting with the children during their visitation in California, falls far short of constituting "substantial evidence" as contemplated by the UCCJA, especially in light of the paucity of other evidence and connections in California concerning the children's welfare.
For the foregoing reasons, the court iterates its finding that New Jersey, not California, has jurisdiction over this custody matter pursuant to the "significant connection" and "substantial evidence" provisions of the UCCJA.
Finally, the court finds that New Jersey has not declined to exercise jurisdiction in this case. See N.J.S.A. 2A:34-31(a)(4)(i).
All the aforementioned jurisdictional findings create a scenario in which California has only one alternative remaining if it is to assume jurisdiction in this case under the UCCJA, i.e., the "emergency" jurisdictional provisions of the act. N.J.S.A. 2A:34-31(a)(3)(i), 2A:34-31(a)(3)(ii). These provisions were, in fact, the focal point of defendant's application before the California court for a change of custody. The California pleadings are replete with allegations concerning the quality of care which plaintiff has been providing for her children. Specifically, defendant alleges, among other things, that plaintiff abandoned the children by leaving them with their maternal grandparents *125 for the past year while plaintiff lived at a different residence; that plaintiff moved the children in June 1982 to her residence in a section of Clifton, New Jersey, surrounded by various bars and cocktail lounges; that plaintiff leaves the children at home alone until 3 A.M. almost every night of the week, and that plaintiff is providing the children with little, if any, parental guidance. The children themselves submitted written declarations to the California court, in which they expressed a desire to continue to reside in California with their father. The children were also interviewed by a psychologist in California and a report was submitted which recommended that the father be granted custody of the children. It was based upon these various declarations that the California court assumed jurisdiction and entered its August 4, 1982 order granting defendant temporary custody of the children.
Under these circumstances there remain two questions which must be answered to complete this court's jurisdictional analysis: (1) Did the California court properly assume jurisdiction under the emergency provisions of the UCCJA and (2) if jurisdiction was properly assumed, what effect does the California court's exercise of emergency jurisdiction have on the question of which state should assume jurisdiction to reach a final disposition of defendant's request for modification of custody? Only one New Jersey case has addressed the issue of what factors are sufficient to allow the exercise of emergency jurisdiction. Marcrum v. Marcrum, 181 N.J. Super. 361 (App.Div. 1981). No reported cases in this State have dealt with the future jurisdictional implications of an exercise of emergency jurisdiction under the UCCJA.
Concerning the question of whether the California court properly assumed emergency jurisdiction, the court notes that although there are many different allegations concerning plaintiff's unfitness as a parent, certain factors serve to diminish the allegedly emergent nature of defendant's application in California *126 Among them is the fact that defendant, for the first time, made allegations that plaintiff abandoned the children with the grandparents only after the children arrived in California in July 1982, when he admitted in his California pleadings that he had been aware that the children were left with the grandparents for the past year. Defendant's pleadings also stated that the children had expressed a desire to live with him for the past four months yet, once again, he took no legal action to confront these allegedly emergent situations until after the children arrived in California. Defendant's counsel's explanation that defendant did not appreciate the seriousness of the situation until after the children were in California was only partially convincing.
Furthermore, defendant's claims of abandonment and neglect are almost completely hearsay, based on statements made to him by the children. At least one court has held that such unsupported information was insufficient to invoke emergency jurisdiction. See Young v. District Court, 194 Colo. 140, 570 P.2d 249 (Sup.Ct. 1977). A similar problem exists with the report of the psychologist who evaluated the children in California. The report basically repeats and accepts as conclusions the unsupported and unproven allegations of the children. In New Jersey the use of this format in a probation department custody report was determined to be totally inadequate. Kridel v. Kridel, 85 N.J. Super. 478 (App.Div. 1964).
Most importantly, since the allegedly deplorable living conditions concern the children's home in New Jersey, the California court did not have the luxury of ordering an investigation of the children's home environment to ascertain the validity of their assertions prior to the entry of the temporary custody order.
Given these elements, there is uncertainty at this juncture as to whether defendant's claims of plaintiff's parental unfitness are true or false. Did California therefore properly *127 exercise emergency jurisdiction in this case? This court finds that it did.
In a situation where the validity of allegations related to abandonment and/or neglect of children is uncertain, the very possibility that the allegations of immediate harm might be true is sufficient for a court to assume emergency jurisdiction in the best interests of the children under the UCCJA. States have a parens patriae duty to children within their borders which should not be abdicated; even broad allegations that an emergency exists should be given due consideration. See Marcrum, supra 181 N.J. Super. at 364, 367. The court notes that in this particular case the children themselves have expressed fear of being returned to the mother and that plaintiff did not address the various assertions of defendant in her New Jersey pleadings. The potential for immediate harm was therefore sufficient for California to exercise emergency jurisdiction.
While this court recognizes that such a standard may lead to attempts at forum shopping based upon fabricated claims of the need to exercise emergency jurisdiction, close scrutiny of all such applications and the consistent imposition of sanctions and both parties' costs of litigation against the party whose allegations are ultimately proven to be frivolous will serve as a deterrent to those seeking to circumvent the UCCJA in this manner. See, e.g., In re Marriage of Schwander, 79 Cal. App.3d 1013, 145 Cal. Rptr. 325 (D.Ct.App. 1978) (fine imposed against party making frivolous claims of emergency). The best interests of children dictate that no stricter standard be imposed in such emergency applications.
Having found that the California court properly assumed emergency jurisdiction in this case, the court now deals with the ramifications of this exercise of jurisdiction for purposes of a final disposition of defendant's custody application. While New Jersey has no reported case law on this subject, the court's review of relevant case law in foreign jurisdictions and of other publications convinces this court that exercise of jurisdiction *128 under the "abandonment" and "emergency" provisions of the UCCJA does not take on the same characteristics or implications as the exercise of jurisdiction under the other provisions of the act. Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and, absent satisfaction of other UCCJA jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition. See, e.g., Fry v. Ball, 190 Colo. 128, 544 P.2d 402 (Sup.Ct. 1975), where even though a Colorado court's exercise of emergency jurisdiction was affirmed, it was recognized that California, the state which satisfied jurisdictional prerequisites other than the emergency provision, was the forum for the ultimate disposition of the custody issue.
The theory that emergency jurisdiction, unlike the other jurisdictional provisions, confers only temporary jurisdiction on a state choosing to exercise it is most succinctly stated in the following passage:
There are, of course, legitimate occasions for the exercise of emergency jurisdiction. However, this special power to take protective measures does not encompass jurisdiction to make a permanent custody determination or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act. [Bodenheimer, "Interstate Custody; Initial Jurisdiction and Continuing Jurisdiction under the UCCJA," XIV Fam.Law Q. No. 4 (Winter 1981); footnotes omitted.]
This court therefore finds that unless a forum satisfies at least one other jurisdictional prerequisite under the UCCJA, its exercise of emergency jurisdiction alone does not give it authority or continuing jurisdiction to render a final custody determination, but forces it to relinquish jurisdiction to a forum satisfying one of those other prerequisites after protective measures connected with the assumption of emergency jurisdiction have been *129 taken. Applying these principles to the case before this court, New Jersey, not California, should conduct the final hearing on the substantive merits of this custody application.
Review of the California order transferring custody to defendant reveals that the California court apparently adhered to the aforementioned theory. Only "temporary care and custody" of the children was granted to defendant and the order was "expressly made without prejudice to [plaintiff] at any and all subsequent hearings." To eliminate any misunderstanding and in the spirit of interstate cooperation encouraged by the UCCJA, this court communicated with the California court by telephone on August 12, 1982, at which time it was confirmed that the California court exercised emergency jurisdiction to protect the immediate interests of the children; that its custody order was temporary in nature, and that the California court was willing to defer to this court's exercise of jurisdiction to determine the custody issue on the merits, assuming that New Jersey satisfied the jurisdictional prerequisites of the UCCJA. For the reasons previously enunciated, New Jersey can properly assume jurisdiction under the UCCJA.
Based upon the totality of the foregoing factors, in recognition of the fact that the children's best interests and stability of their lifestyle will be best served if a final determination of custody is made prior to the commencement of the 1982-83 school year, it is
ORDERED that a hearing be held on the substantive merits of defendant's custody application on Thursday, August 26, 1982, at 9 a.m.
In deference to the California court's finding of a need for a protective order in this matter, defendant will be allowed to retain the children in his custody pending the hearing, but he is directed to appear with the children in this court on the day of the scheduled hearing.