IN THE MATTER OF: HOLLY ANN VAN KOOTEN AND BENJAMIN LEE VAN KOOTEN, JUVENILES, RUTHERFORD COUNTY DSS, PETITIONER AND TONY VAN KOOTEN, FATHER, RESPONDENT

*No. COA96-1134*

(Filed 15 July 1997)

**1. Parent and Child § 111 (NCI4th)— children visiting in N. C.—allegations of abuse—jurisdiction—Juvenile Code, UCCJA, and PKPA**

   The Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act were applicable to an action initiated with abuse, neglect, and dependency petitions filed pursuant to Chapt. 7A (the Juvenile Code) where the parents of the children

**IN RE VAN KOOTEN**

[126 N.C. App. 764 (1997)]

were married in Iowa, divorced in Colorado, the father was awarded custody by the Colorado court, they lived in Iowa from that time forward, and abuse was alleged while the children were visiting their mother in North Carolina. The UCCJA expressly includes within its jurisdictional parameters proceedings in abuse, dependency, and/or neglect and the jurisdictional requirements of the UCCJA must be satisfied for the district court to have jurisdiction to adjudicate abuse, neglect, and dependency petitions filed pursuant to the Juvenile Code. Although *In the Matter of Arends*, 88 N.C. App. 550, and *In re Botsford*, 75 N.C. App. 72, appear to suggest that the UCCJA does not apply in the context of the Juvenile Code, the issue was not squarely presented in either of those cases. Although the PKPA does not include within its definitions any reference to neglect, abuse, or dependency proceedings, there is nothing to indicate that it was intended to be limited solely to custody disputes between parents and it is applicable to all interstate custody proceedings affecting a prior custody award by a different state, including abuse, neglect, and dependency proceedings. N.C.G.S. § 7A-516 to 744; N.C.G.S. § 50A-1 to 25.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 36-51; Parent and Child §§ 22, 35.**

2. **Infants and Minors § 70 (NCI4th)— abused children—visiting N.C.—emergency jurisdiction**

The trial court vacated an order adjudicating children abused, neglected, and dependent and a dispositional order placing the children with petitioner but affirmed and remanded a nonsecure custody order where a Colorado order had awarded custody to the father, the juveniles resided with their father in Iowa and visited their mother in North Carolina, and alleged abuse by the father in Iowa was discovered in North Carolina. The court had subject matter jurisdiction to adjudicate the children abused, neglected, and dependent and to enter an appropriate disposition within the context of Chapt. 7A; however, whether the court had subject matter jurisdiction to adjudicate the children abused, neglected, and dependent under the UCCJA and PKPA is a separate question. The record supports a determination that North Carolina had emergency jurisdiction under the UCCJA and PKPA because neither child has resided in Colorado since 1991, the record does not indicate a significant connection by the parents or children with that state, the children were in

North Carolina even though they reside in Iowa and there was a reasonable factual basis to believe that they had been abused. However, the North Carolina court was required to defer any further proceedings after issuing the temporary nonsecure custody order pending a response from Iowa as to whether that state was willing to assume jurisdiction. The order is remanded for the trial court to contact the Iowa courts. N.C.G.S. § 50A-3(a)(3)

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 36-44.**

**Marriage as affecting jurisdiction of juvenile court over delinquent or dependent. 14 ALR2d 336.**

Judge JOHN dissenting.

Appeal by respondent Tony Van Kooten from juvenile order and dispositional judgment both dated 30 March 1996 by Judge Stephen F. Franks in Rutherford County District Court. Heard in the Court of Appeals 14 May 1997.

*Hamrick, Bowen, Nanney & Dalton, L.L.P., by Bradley K. Greenway, for petitioner-appellee.*

*Neville S. Fuleihan, for respondent-appellant.*

GREENE, Judge.

Tony Van Kooten (Van Kooten) appeals from a 30 March 1996 juvenile order adjudicating his two children, Holly Van Kooten (Holly) and Benjamin Van Kooten (Benjamin), abused, neglected, and dependant juveniles and awarding custody of the children to the Rutherford County Department of Social Services (petitioner).

Petitioner filed a petition under Chapter 7A seeking to have the children adjudicated abused, neglected, and dependent. Van Kooten moved to dismiss the petition on the grounds that North Carolina lacked jurisdiction under Chapter 50A, the Uniform Child Custody Jurisdiction Act (UCCJA).

The pertinent facts as found by the trial court are: Van Kooten and Pam Davies (Davies), the children's natural parents, were married in Iowa in 1987 and divorced in Colorado in 1991. By an order of the court in Colorado (1991), Van Kooten was awarded custody of the children and lived with the children in Iowa from that time forward.

Davies remarried and has resided in Rutherford County, North Carolina for approximately one and one-half years. Davies had little contact with her children after the divorce.

In January 1996 the children visited Davies in Rutherford County, North Carolina. Benjamin (six years old) immediately began having behavioral problems, including physically assaulting his infant half-brother and sexually touching Holly (eight years old). Upon being called by Davies, petitioner interviewed Holly who stated that it "made her sad when [Van Kooten] touched her in her private part and that [he] had been touching her in her private part since she started kindergarten." A medical examination of Holly revealed "evidence consistent with prior vaginal penetration." A daycare provider for the children stated that Van Kooten had been "verbally and physically abusive to [Benjamin]" numerous times in her presence. At the time of the hearing, Benjamin had been hospitalized and diagnosed with "intermittent explosive disorder and post-traumatic stress disorder" and had ideas of suicide. Holly was also hospitalized and being treated for "major depression."

Van Kooten's evidence was to the effect that "his home was adequate and well-kept, that his parents lived close by and that there was a good family support group to tend to his children, and that the children had not been either physically or sexually abused." Van Kooten admitted that he would "from time-to-time pinch Holly's 'boobs' but that he never touched her private parts."

Based upon the findings above, the trial court first issued a non-secure custody order placing the children with the petitioner. The trial court found at a subsequent hearing on the merits that "Colorado is not the appropriate forum for additional proceedings . . . and the Iowa Courts have previously refused to exercise jurisdiction." The trial court concluded that both Holly and Benjamin were "abused," "neglected," and "dependent" juveniles and Van Kooten was unable to provide for them. The trial court determined that it would be in their best interest to place custody of the children with petitioner.

---

The issues are (I) whether the UCCJA and/or the Parental Kidnaping Prevention Act (PKPA) applies in the context of abuse, neglect, and dependency petitions filed pursuant to Chapter 7A (Juvenile Code); and if so, (II) whether subject matter jurisdiction exists in this State when it is discovered, during a visit to this State, that the children were abused in their resident state.

IN RE VAN KOOTEN

[126 N.C. App. 764 (1997)]

I

**[1]** Our resolution of this case requires the examination of three separate statutory provisions: the North Carolina Juvenile Code, N.C.G.S. § 7A-516 to -744 (1995); the UCCJA, N.C.G.S. § 50A-1 to -25 (1989); and the PKPA, 28 U.S.C.A. § 1738A (1994).

### Juvenile Code

The district courts of North Carolina have "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be . . . abused, neglected, or dependent." N.C.G.S. § 7A-523(a). "A proceeding in which a juvenile is alleged to be abused, neglected, or dependent may be commenced in the district in which the juvenile resides or is present." N.C.G.S. § 7A-558(b). The Director of the Department of Social Services is the exclusive party entitled to file a petition alleging either abuse, neglect, or dependency. N.C.G.S. § 7A-544; *see* N.C.G.S. § 7A-547 (the county prosecutor may require filing of petition). If the district court adjudicates the child to be abused, neglected, or dependent, it is required to design a plan to meet the needs of the child, N.C.G.S. § 7A-646, which may include altering custodial or visitation rights. N.C.G.S. § 7A-647(2).

### UCCJA

The UCCJA is a jurisdictional statute relating to child custody disputes. *See* N.C.G.S. § 50A-3. It seeks to prevent parents from forum shopping their child custody disputes and assure that these disputes are litigated in the state "with which the child and the child's family have the closest connection." N.C.G.S. § 50A-1(a)(3). The UCCJA expressly includes within its jurisdictional parameters proceedings in abuse, dependency, and/or neglect. *See* N.C.G.S. § 50A-2(3) (defining "custody proceeding" to include "neglect and dependency proceedings"); *see L.G. v. People*, 890 P.2d 647, 657-58 (Colo.) (holding that actions for neglect and dependency governed by UCCJA), *cert. denied, L.G. v. El Paso County Dep't. of Social Serv.*, —— U.S. ——, 133 L. Ed. 2d 40 (1995). The jurisdictional requirements of the UCCJA must, therefore, be satisfied for the district court to have jurisdiction to *adjudicate* abuse, neglect, and dependency petitions filed pursuant to the Juvenile Code.[1]

---

1. We acknowledge that there are two cases from this Court that appear to suggest that the UCCJA does not apply in the context of the Juvenile Code. *See In the Matter of Arends*, 88 N.C. App. 550, 556, 364 S.E.2d 169, 172 (1988); *see also In re Botsford*, 75 N.C. App. 72, 74, 330 S.E.2d 23, 25 (1985). In neither of these cases, however, is the issue squarely presented and we therefore do not read them as holding that the UCCJA does not apply in the context of the Juvenile Code.

PKPA

Although the PKPA does not include within its definition section any reference to neglect, abuse, or dependency proceedings, 28 U.S.C.A. § 1738A(b), "there is nothing to indicate that it was intended to be limited solely to custody disputes between parents." *In re Appeal in Pima County Juvenile Action No. J-78632*, 711 P.2d 1200, 1206 (Ariz. Ct. App. 1985), *approved in part, vacated in part*, 712 P.2d 431 (Ariz. 1986). Furthermore, "[t]he PKPA's coverage of custody proceedings is exclusive [in providing that] 'every State shall enforce . . . and shall not modify . . . *any child custody determination* made . . . by a court of another State.' " *State ex rel. D.S.K.*, 792 P.2d 118, 129 (Utah Ct. App. 1990). Accordingly, "the PKPA is applicable to all interstate custody proceedings affecting a prior custody award by a different state, including [abuse,] neglect and dependency proceedings." *See id.* at 130; Ann M. Haralambie, *Handling Child Custody, Abuse and Adoption Cases* § 11.02 at 571 (1993) ("majority of cases hold that the [PKPA] applies to dependency and neglect actions").

II

[2] The district courts of this State have jurisdiction to enter child custody decrees in several instances, including (1) when this State is the "home state" of the child, N.C.G.S. § 50A-3(a)(1), (2) when "the child and at least one contestant . . . have a significant connection with this State," N.C.G.S. § 50A-3(a)(2), and (3) when the child is "physically present in this State" and "it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." N.C.G.S. § 50A-3(a)(3). The exercise of emergency jurisdiction, however, confers authority to enter temporary protective orders only, *see* N.C.G.S. § 50A-25 (secure and nonsecure orders); *Trader v. Darrow*, 630 A.2d 634, 638 (Del. 1993); *Hache v. Riley*, 451 A.2d 971, 975 (N.J. Super. Ct. Ch. Div. 1982) (no authority to enter permanent orders), pending application to a state having previously rendered a child custody decree "under statutory provisions substantially in accordance with [Chapter 50A]," N.C.G.S. § 50A-13, and continuing to have jurisdiction "under jurisdictional prerequisites substantially in accordance with" Chapter 50A. N.C.G.S. § 50A-14(a); *see* 28 U.S.C.A. § 1738A(f); *see also Brock v. Dist. Court of County of Boulder*, 620 P.2d 11, 14 (Colo. 1980). In the absence of a previous custody decree from another state which has continuing jurisdiction, any orders entered pursuant to the exercise of emergency jurisdiction shall be temporary pending application to any state having either

"home state" or "significant connection" jurisdiction. In the event no other state has jurisdiction or has jurisdiction and is unwilling to exercise that jurisdiction, the courts of this State are authorized to enter any adjudicatory and/or dispositional orders within the meaning of the Juvenile Code, temporary or permanent.

The emergency conditions giving rise to jurisdiction to enter a temporary order under section 50A-3(a)(3) may exist either in this State or in the state that entered the custody decree. *Nelson v. Nelson*, 433 So. 2d 1015, 1019 (Fla. Dist. Ct. App. 1983); *see* N.C.G.S. § 50A-3(a)(3) ("has been subjected to . . . mistreatment").

In this case, the two children were present in Rutherford County at the time the petitioner filed its petition alleging that the children were abused, neglected, and dependent. Within the context of Chapter 7A, the trial court thus had subject matter jurisdiction to adjudicate the children as abused, neglected, and dependent and to enter an appropriate disposition.

Whether the trial court had subject matter jurisdiction to adjudicate the children as abused, neglected, and dependent within the meaning of the UCCJA and the PKPA is a separate question. There exists an order entered in Colorado granting the custody of the two children to Van Kooten. Neither child has resided in Colorado since 1991 (thus no "home state" jurisdiction) and the record does not indicate that either the parents or children have any "significant connections" with that state. Colorado thus no longer has jurisdiction with respect to the custody of these children and the trial court was not precluded from modifying that decree. N.C.G.S. § 50A-14(a); 28 U.S.C.A. 1738A (F). Was the trial court, however, precluded from adjudicating the children as abused, neglected, and dependent because Iowa was the "home state" of the children?

Although the children and Van Kooten have resided in Iowa since 1992 (qualifying Iowa as the children's "home state"), the record supports a determination that North Carolina had emergency jurisdiction under section 50A-3(a)(3) and 28 U.S.C.A. 1738A (c)(2)(C). Both children were present in North Carolina at the time the trial court entered its order. The evidence reveals a reasonable factual basis to believe that Holly had been sexually abused by Van Kooten in Iowa and as a consequence was hospitalized in North Carolina for depression and that Benjamin had been physically abused by Van Kooten in Iowa and as a consequence was hospitalized in North Carolina for stress disorder. The trial court, therefore, had jurisdiction to enter a

temporary nonsecure custody order placing the children with the petitioner. N.C.G.S. § 7A-576(a)(2). At that point the trial court was required to defer any further proceedings in the matter pending a response from Iowa as to whether that state was willing to assume jurisdiction to resolve the issues of abuse, neglect, and dependency. The trial court did find as a fact that Iowa had "previously refused to exercise jurisdiction," but this finding does not reveal whether Iowa was refusing to assume jurisdiction to address the current issues. In the absence of a finding that Iowa refused to assume jurisdiction to address the current issues of abuse, neglect, and dependency, the trial court's adjudication was beyond its temporary authority to issue nonsecure orders and therefore in error.[2]

The order adjudicating the children as abused, neglected, and dependent and the dispositional order placing the children with the petitioner must therefore be vacated. The nonsecure custody order placing the children with the petitioner is affirmed and remanded. On remand the trial court must contact the Iowa courts to determine if that State is willing to exercise jurisdiction in this case. If Iowa is willing to exercise jurisdiction, the trial court must defer to the exercise of that jurisdiction and transfer this case to Iowa for hearing. If Iowa declines to exercise jurisdiction, the trial court may proceed with the exercise of jurisdiction and conduct a hearing on the merits of the petition and enter appropriate dispositional orders.[3] N.C.G.S. § 50A-3(a)(4); 28 U.S.C.A. § 1738A(c)(2)(D); see *State ex rel. D.S.K.*, 792 P.2d at 127.

Vacated in part, affirmed in part, remanded.

Judge JOHN dissents with separate opinion.

Judge WALKER concurs.

---

2. A custody order, entered after an adjudication on the merits, is not a nonsecure or secure custody order as those terms are used in the context of section 7A-573. An order from an adjudication on the merits must be entered pursuant to the dispositional alternatives of Chapter 7A, Article 52.

3. Pending resolution of the issue of which forum is best suited to hear this matter, the North Carolina trial court has authority to issue periodic nonsecure custody orders after conducting hearings to determine the need for such continued custody. N.C.G.S. § 7A-577(a), (c).

**IN RE VAN KOOTEN**

[126 N.C. App. 764 (1997)]

Judge JOHN dissenting.

I respectfully dissent.

The majority maintains the jurisdictional requirements of the UCCJA are applicable in the context of the Juvenile Code, and asserts in fn. 1 that this Court has not previously addressed the question. I disagree.

The first case cited in fn. 1, *In the Matter of Arends*, 88 N.C. App. 550, 364 S.E.2d 169 (1988), contains the following statements:

Petitioner submits to this Court the contention that Chapter 50A [the UCCJA] should control although the proceedings in juvenile court were brought under Chapter 7A. This argument is untenable.

*Id.* at 553, 364 S.E.2d at 171.

The jurisdictional prerequisites of the UCCJA would only govern in permanent custody situations. The order entered by the juvenile court . . . was not an order for permanent custody. . . . Temporary placements of neglected children are made pursuant to the North Carolina Juvenile Code.

*Id.* at 556, 364 S.E.2d at 172. Whether I or the majority agree with the conclusion, the above quotations can fairly be read only "squarely" to reject as "untenable" the contention that the UCCJA is applicable to proceedings in the juvenile court. It is well-established that subsequent panels of this Court are bound by previous decisions absent modification by our Supreme Court. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). *Arends* therefore mandates our holding herein that the trial court under the circumstances *sub judice* was not encumbered by the UCCJA and properly assumed jurisdiction, not only to issue its non-secure custody order under N.C.G.S. §§ 7A-573 & 7A-574(a)(2) (with timely reviews under N.C.G.S. § 7A-577), but also to conduct an adjudicatory hearing pursuant to Chapter 7A, Article 51, and to enter a dispositional order pursuant to N.C.G.S. § 7A-647.

Nonetheless, under the Juvenile Code, the trial court's dispositional order, while indisputably well-intended, must be vacated. G.S. § 7A-647, "Dispositional alternatives for delinquent, undisciplined, abused, neglected, or dependent juvenile," provides in pertinent part as follows:

The following alternatives for disposition shall be available to any judge exercising jurisdiction . . . :

. . . .

(2)c. Place him in the custody of the Department of Social Services in the county of his residence, or in the case of a juvenile who has legal residence outside the State, in the physical custody of the Department of Social Services in the county where he is found so that agency may return the juvenile to the responsible authorities in his home state. . . .

A juvenile having legal residence outside this state, without dispute the circumstance of the juveniles herein, may be placed in the custody of the local Department of Social Services solely for the purpose enunciated in the section. The trial court placed the Van Kooten children in the custody of petitioner for the achievement of commendable purposes, but lacked authority to do so. That portion of the order inconsistent with G.S. § 7A-647 must be vacated and this matter remanded for entry of an order directing petitioner to "return the juvenile[s] to the responsible authorities in [their] home state" of Iowa.

Finally, I note in passing that the majority presumes, absent any findings by the trial court supported by competent evidence in the record, that Colorado, where a court of competent jurisdiction previously entered a custody decree concerning the children in question, "no longer has jurisdiction with respect to the custody of these children." While the majority's assessment may ultimately be determined to be accurate, it is our province only to review findings and conclusions of the trial court and not to interpose our own.