IN THE MATTER OF CASEY MALONE, JUVENILE

No. COA97-1003

(Filed 30 April 1998)

## 1. Divorce and Separation § 488 (NCI4th)— abused child— emergency jurisdiction under UCCJA—nonsecure temporary custody order

The trial court had authority under the emergency jurisdiction provision of the Uniform Child Custody Jurisdiction Act (UCCJA) and N.C.G.S. § 50A-3(a)(3)(ii) to enter a temporary non-secure custody order for a child who now resides and is present in North Carolina, although custody and visitation had been awarded in Florida at the time the child's parents were divorced in that state, where the physical and psychological evidence showed that the child had been sexually abused, and the child named her father as the person who abused her.

**2. Divorce and Separation § 491 (NCI4th)— abused child— custody and visitation—previous Florida order—jurisdiction under UCCJA—contact with Florida court**

The trial court erred by exercising subject matter jurisdiction over the custody and visitation of a child who allegedly had been sexually abused by her father without first contacting the Florida court that had previously exercised jurisdiction over the custody and visitation of the child to determine whether the Florida court would be willing to assume jurisdiction to resolve the issue of sexual abuse of the child. The fact that DSS made efforts to contact various Florida agencies does not meet the statutory requirement of contact with the Florida court.

Appeal by respondent from order entered 6 December 1996 by Judge Carolyn D. Johnson in Durham County District Court. Heard in the Court of Appeals 30 March 1998.

*Daniel Shatz for respondent appellant.*

*Durham County Attorney, by Deputy County Attorney Thomas W. Jordan, Jr., for petitioner appellees Durham County Department of Social Services, Guardian Ad Litem Meredith Shuford, and Judy Malone.*

McGEE, Judge.

Casey Malone was born 22 November 1991 to Judy and Raymond Malone. On 17 March 1995, Judy and Raymond were divorced in Florida where the family had been living. Judy Malone had custody of Casey as set forth in the Malones' separation agreement which was incorporated into their Florida divorce judgment. On or about 1 April 1996, Judy Malone relocated to Durham, North Carolina and established a residence there with Casey.

On 1 May 1996, a report was made to the Durham County Department of Social Services (DSS) alleging that Casey had been sexually abused by her father while in Florida. Pamelia Pinchback, an investigator with Child Protective Services, was assigned to the case. After contacting the Florida Department of Human Rehabilitative Services (HRS) for assistance in Casey's case, Pinchback filed a juvenile petition on 14 May 1996 alleging Casey had been sexually abused. The petition requested that the trial court conduct a hearing and issue a nonsecure custody order granting immediate temporary custody of the child to (DSS). The court granted custody of Casey to

DSS on 14 May 1996 and placed her in the care of her mother, Judy Malone. The trial court issued additional orders for continued custody on 16 May, 31 May, 5 June, 11 June, and 24 June 1996. DSS continued to have custody of Casey pending the adjudication and disposition of the petition.

In an order entered 6 December 1996, the trial court made findings of fact that respondent filed a motion to dismiss on 19 July 1996 asserting that there existed an outstanding action in Collier County, Florida concerning the custody and visitation of Casey Malone. The motion requested that in the alternative, the trial court transfer the matter to the Florida court. In a hearing held 31 July 1996 and in an order entered 13 September 1996, the trial court found that Raymond Malone had made a general appearance. The trial court also concluded it had jurisdiction to hear the matter under the North Carolina Juvenile Code, that under N.C. Gen. Stat.§ 50A-3(a)(3) the court had emergency jurisdiction, and that the court retained subject matter jurisdiction.

On 1 October 1996, respondent filed a renewed motion to dismiss for lack of jurisdiction. On 10 October 1996, a second hearing was held in which the court reasserted the jurisdiction of the North Carolina court and found that

> [t]here is no provision in the Parental Kidnapping Prevention Act [PKPA] which precludes a child protection agency from filing a juvenile petition to protect a child from neglect or abuse. There being no provision precluding a child protection agency from filing a petition alleging neglect and abuse, there is no conflict between the federal legislation and the North Carolina Juvenile Code.

A hearing on the merits of the juvenile petition was held on 23 October and 24 October 1996. In an order entered 6 December 1996, the trial court found, based upon the evidence, that Casey had shown to her mother, other family members, and a day care operator, behaviors which included nightmares, twisting her hands and shaking her head in a ticking fashion, taking her clothes off and masturbating, trying to French kiss her dolls, and grabbing her mother's breasts.

The trial court found that Dr. Mary Baker Sinclair, an expert in clinical psychology, conducted a mental health evaluation of Casey. Through a series of meetings with Casey, Dr. Sinclair diagnosed that she suffered from post traumatic stress disorder. Dr. Sinclair testified

IN RE MALONE

[129 N.C. App. 338 (1998)]

that Casey identified her father, Raymond Malone, as the person who touched her private parts. The trial court also found that Dr. Laura Gutman conducted a medical examination of Casey which revealed an abnormal anal exam showing wide anal gaping as a result of penetrative anal trauma. Dr. Gutman confirmed anal sexual abuse of the child.

The trial court made findings of fact and conclusions of law that Casey Malone was a sexually abused child and that Raymond Malone sexually abused her. The trial court ordered that all visitation and contact between Raymond Malone and Casey be suspended pending recommendation by the child's treating therapist that contact be resumed. It is from this order that Raymond Malone appeals. Respondent has not appealed from the trial court's earlier nonsecure custody orders.

Respondent Raymond Malone argues that the trial court erred by: (1) exercising subject matter jurisdiction over the custody and visitation of Casey Malone by adjudicating the petition in this case; (2) failing to contact the Florida court exercising jurisdiction over custody of the child to determine the appropriate forum to litigate the merits of the petition; and (3) in exercising personal jurisdiction over respondent.

I.

[1] Respondent first argues that the trial court erred in exercising subject matter jurisdiction over the custody and visitation of Casey Malone. At the time of the filing of the petition in Durham, North Carolina respondent alleges an action had previously been filed in Collier County, Florida concerning the custody and visitation of Casey Malone. In orders resulting from hearings held on 31 July 1996 and 10 October 1996, the North Carolina trial court stated it exercised jurisdiction over the custody and visitation of Casey through the emergency provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), as set forth in Chapter 50A of the North Carolina General Statutes, and the North Carolina Juvenile Code, N.C. Gen. Stat. § 7A-516-744 (Cum. Supp. 1997). In the 10 October 1996 order, the trial court also found that the PKPA did not preclude DSS from filing a juvenile petition to protect the child from abuse.

The UCCJA was designed to reduce interstate jurisdictional disputes in custody determinations and to prevent forum shopping by parents and other litigants dissatisfied with the results of custody

cases. N.C. Gen. Stat. § 50A-1 (1989). "The UCCJA expressly includes within its jurisdictional parameters proceedings in abuse, dependency, and/or neglect." *In re Van Kooten*, 126 N.C. App. 764, 768, 487 S.E.2d 160, 162-63 (1997), *appeal dismissed*, 347 N.C. 576, 502 S.E.2d 618 (1998). Thus, the courts of this state must meet the requirements of the UCCJA in order to have jurisdiction to adjudicate abuse petitions. *Van Kooten*, 126 N.C. at 768, 487 S.E.2d at 163. This is true even in light of N.C. Gen. Stat. § 7A-523(a) (1995) which states that the district courts of North Carolina have "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be . . . abused, neglected, or dependent." We recognize, as petitioner argues, that *In the Matter of Arends*, 88 N.C. App. 550, 556, 364 S.E.2d 169, 172 (1988) appears to suggest that the UCCJA does not apply in relation to Chapter 7A of the N.C. General Statutes, being the North Carolina Juvenile Code. *Arends*, however, addresses a different factual and procedural situation. In accordance with our Court in *Van Kooten*, we also do not read *Arends* "as holding that the UCCJA does not apply in the context of the Juvenile Code." *Van Kooten*, 126 N.C. App. at 768, 487 S.E.2d at 163 (footnote 1).

The PKPA, 28 U.S.C.A. § 1738A (1994) was designed to remedy inconsistent interpretation of the UCCJA by different state courts and to create a uniform standard. *Meade v. Meade*, 812 F.2d 1473, 1476 (4th Cir. 1987). Our Court has held:

> Although the PKPA does not include within its definition section any reference to neglect, abuse, or dependency proceedings, 28 U.S.C.A. § 1738A(b), "there is nothing to indicate that it was intended to be limited solely to custody disputes between parents." *In re Appeal in Pima County Juvenile Action No. J-78632*, 711 P.2d 1200, 1206 (Ariz. Ct. App. 1985), *approved in part, vacated in part*, 712 P.2d 431 (Ariz. 1986). Furthermore, "[t]he PKPA's coverage of custody proceedings is exclusive [in providing that] '*every State shall enforce . . . and shall not modify . . . any child custody determination made . . . by a court of another State.*' " *State ex rel. D.S.K.*, 792 P.2d 118, 129 (Utah Ct. App. 1990). Accordingly, "the PKPA is applicable to all interstate custody proceedings affecting a prior custody award by a different State, including [abuse,] neglect and dependency proceedings." *See id.* at 130[.]

*Van Kooten*, 126 N.C. App. at 769, 487 S.E.2d at 163 (emphasis added).

The trial court has jurisdiction to hear child custody issues if one of the four factors outlined in N.C. Gen. Stat. § 50A-3(a) (1989) is met:

> (1) This State (i) is the home state of the child at the time of commencement of the proceeding . . .

> (2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents . . . have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care . . .

> (3) The child is physically present in this State and . . . (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse . . .

> (4) (i) It appears that no other state would have jurisdiction . . . or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

The trial court in this case asserted jurisdiction under N.C.G.S. § 50A-3(a)(3)(ii), the emergency jurisdiction provision. We therefore need not address whether any of the other factors are met.

Our Court has held that "[t]he exercise of emergency jurisdiction . . . confers authority to enter *temporary protective orders only* . . . pending application to a state having previously rendered a child custody decree . . . and continuing to have jurisdiction[.]" *Van Kooten*, 126 N.C. App. at 769, 487 S.E.2d at 163 (citations omitted) (emphasis added). In this case, Casey Malone was present in Durham County at the time the petition was filed alleging that she had been sexually abused.

> Within the context of Chapter 7A, the trial court thus had subject matter jurisdiction to adjudicate the [child] as abused . . . and to enter an appropriate disposition.

> Whether the trial court had subject matter jurisdiction to adjudicate the [child] as abused . . . within the meaning of the UCCJA and the PKPA is a separate question.

*Id.* at 770, 487 S.E.2d at 164. The record supports the trial court's determination that North Carolina had emergency jurisdiction. Both the physical and psychological evidence showed that Casey was sexually abused. In addition, Casey herself named respondent as the person who abused her. The trial court, therefore, had authority under the emergency jurisdiction provision of the UCCJA and N.C.G.S. § 50A-3(a)(3)(ii) to enter a temporary nonsecure custody order. *See Van Kooten,* 126 N.C. App. at 770-71, 487 S.E.2d at 164. The trial court had subject matter jurisdiction only to enter a temporary custody order.

II.

**[2]** Respondent's second argument is related to his first argument. Respondent argues the trial court erred by failing to contact the Florida court that had previously exercised jurisdiction over the custody of the child. We agree.

As discussed above, at the time the petition was filed in Durham County there was already a custody action filed in a Florida court. In addition, the Florida court had original jurisdiction over the custody of the child since it had issued the divorce decree, which incorporated the Malones' separation agreement giving custody of Casey to her mother. While the trial court in this state did have emergency jurisdiction to enter the temporary nonsecure custody order, at the point in which the order was entered "the trial court was required to defer any further proceedings in the matter pending a response from [Florida] as to whether that state was willing to assume jurisdiction to resolve the issues of abuse[.]" *Id.* at 771, 487 S.E.2d at 164.

N.C. Gen. Stat. § 50A-6(b) (1989) states that before hearing a petition for child custody, the court shall check the pleadings and other available resources to determine if any such proceedings are pending in another state. "If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state." *Id.*

Furthermore, N.C. Gen. Stat.§ 50A-6(c) (1989) mandates that when a trial court hearing a child custody matter is informed that a proceeding concerning custody of the child was pending in another state before the trial court assumed jurisdiction, it "shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more

**IN RE MALONE**

[129 N.C. App. 338 (1998)]

appropriate forum . . . ." *Id.* This statute directs that at the earliest stage possible, the trial court should make efforts to determine if a custody action is already pending in another state. Once a determination is made that a custody action is pending, the court must then contact the court of the other state as to details surrounding the case and whether or not that state will accept jurisdiction as to this most recent matter.

In this case, there is no evidence in the record that the trial court communicated with the Florida court. DSS argues that it contacted the Florida HRS as well as the Sheriff's Department in Collier County, Florida and received little, if any, assistance. In fact, DSS stated HRS even indicated that it had no jurisdiction over the child since she no longer lived in Florida. However, this is not sufficient contact under the mandate of our state statute that requires the trial court to directly contact the Florida court to determine if Florida is willing to exercise jurisdiction in this case. See N.C.G.S. § 50A-6(b) and (c). The fact that DSS made efforts to contact various Florida agencies does not meet the requirement of the statute. The trial court must make the contact with the Florida court.

> If the [Florida court] is willing to exercise jurisdiction, the trial court must defer to the exercise of that jurisdiction and transfer this case to [Florida] for hearing. If [Florida] declines to exercise jurisdiction, the trial court may proceed with the exercise of jurisdiction and conduct a hearing on the merits of the petition and enter appropriate dispositional orders.

*Van Kooten,* 126 N.C. App. at 771, 487 S.E.2d at 164; *see* N.C. Gen. Stat. § 50A-3(a)(4) (1989).

We reverse and remand to the trial court for the trial court to directly contact the appropriate Florida court to determine if Florida is willing to assume jurisdiction to resolve the issue of the sexual abuse of Casey Malone. As a result of this decision we need not address respondent's remaining issue on appeal.

Reversed and remanded.

Judges MARTIN, Mark D. and SMITH concur.